UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-1794 (JFB)
_____

JULIO CALVO,

Petitioner,

VERSUS

JOHN J. DONELLI, SUPERINTENDENT

Respondent.

_____

MEMORANDUM AND ORDER
April 30, 2007
_____

JOSEPH F. BIANCO, District Judge:

Julio Calvo (hereinafter "petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner was convicted in a judgment rendered on October 29, 2002, following a jury trial in New York County Court, Nassau County. Petitioner was convicted of criminal possession of a weapon in the third degree (N.Y. Penal Law 265.02[4]), and was sentenced, as a second felony offender, to a determinate term of imprisonment of three years, followed by five years of post-release supervision.

Petitioner challenges his conviction on the following grounds: (1) he was denied effective assistance of appellate counsel, because his appellate counsel failed to raise several constitutional issues on direct appeal and did not address the ineffective assistance of petitioner's trial counsel; (2) his Sixth and Fourteenth Amendment rights to confront and to cross-examine witnesses were denied when the grand jury testimony of witness Jose Londono was admitted as part of petitioner's defense case by stipulation, without petitioner's knowledge, consent and/or waiver; (3) petitioner's Sixth and Fourteenth Amendment rights to be present during all material stages of trial were violated when, during the petitioner's absence, his counsel and the prosecution stipulated to enter Jose Londono's grand jury testimony in lieu of testifying in front of the jury; and (4) his Fifth and Fourteenth Amendment rights to be free of self incrimination were violated when the

State's witness, Sergeant Paul Clark, allegedly gave testimony to the grand jury that divulged the petitioner's prior criminal history and falsely claimed that the petitioner was on parole supervision at the time of arrest.

For the reasons stated below, petitioner's request for a writ of habeas corpus is denied**.**

I. BACKGROUND

A. The Facts

The following facts are adduced from the instant petition and underlying record.

At approximately 2:30 a.m. on April 1, 2001, Police Officer Joseph Nocella ("Officer Nocella") stopped in the parking lot of Planet Malibu, a night club in the town of Elmont, in Nassau County, New York. (Trial Transcript (hereinafter "Tr.") at 133.) Upon his arrival, Officer Nocella spoke with Jose Londono ("Londono"), a security guard at the nightclub. (*Id.*) Londono told Officer Nocella that three individuals, who had been hired as outside security for the musical act performing at the club that evening, had approached the club earlier that evening. (Transcript of Suppression Hearing (hereinafter "Supp. Tr.") at 8.) As the three individuals approached the entrance to the night club, the men were patted down and one was found to be carrying a firearm. (Tr. 180-181.) Londono told the three individuals that firearms were not permitted inside the club. (*Id.*) In response, the three individuals returned to the white SUV in which they had arrived, then walked back to the club entrance about five minutes later. (*Id.*) The individuals were patted down again and were found to have no firearms. (*Id.*)

At approximately 3:36 a.m, after Londono had relayed this information to Officer Nocella, Londono accompanied the officer to the parking lot and showed him the vehicle that the three individuals had returned to after being informed that firearms were not permitted in the club. (*Id.*) Officer Nocella checked the SUV's registration and found that the vehicle was registered to petitioner. (Tr. 152-153.) Officer Nocella then called his supervisor for assistance. (Tr. 134.) Two sergeants and four additional officers responded to the scene. (Tr. 135.) Sergeant Paul Clark ("Sergeant Clark") was one of the officers who arrived at the location. (*Id.*)

At approximately 4:30 a.m., after waiting for the three individuals to exit the club, Sergeant Clark and Police Officer Peter Zayaz ("Officer Zayaz") drove over to the white SUV, which was now surrounded by five or six men, including petitioner. (Tr. 66.) Sergeant Clark asked these individuals if they had any weapons, to which they responded "no." (Tr. at 77.) The officers then asked the individuals whether they could search them or pat them down, to which the individuals responded "yes." (*Id.*) The individuals were patted down and were not carrying any weapons. (*Id.*) After learning that petitioner owned the SUV, Sergeant Clark asked if he could search the car to see whether there were any weapons in the vehicle. (Tr. 78.) Petitioner gave the officer permission to search his vehicle. (*Id.*) Upon searching the vehicle, Sergeant Clark found, in the cargo area, an athletic bag that contained a loaded .40-caliber Smith and Wesson gun. (Tr. 83-84.) After retrieving the gun, Sergeant Clark asked petitioner whether the weapon belonged to him. (Tr. 84.) Petitioner denied ownership of the gun. (*Id.*) Sergeant Clark handed the gun to Sergeant Kuntz, another officer at the scene, to check the serial number of the

2

weapon. (Tr. 85.) Sergeant Clark then explained to petitioner that he would find out who owned the gun, and that if it belonged to petitioner, petitioner should, to save time, tell him who owned the gun. (*Id.*) Petitioner then admitted that the gun belonged to him. (*Id.*) Petitioner was then asked if he had a permit or a license to carry the weapon and whether he had any justification for having the gun. (Tr. 86.) Petitioner stated that he did not. (*Id.*) Petitioner was then placed under arrest and transported to the station house so that his arrest could be processed. (*Id.*) At approximately 8:40 a.m., Detective Emmanuel Midy met with petitioner and advised him of his constitutional rights. (Tr. 108.) Petitioner indicated that he understood his rights. (*Id.*) When asked about the weapon that was recovered from his SUV, petitioner indicated that it was his gun, and that it had been located in his gym bag. (*Id.*) Petitioner claimed that he was holding the gun for his sister, who resides in Florida. (*Id.*) It was later determined that the gun had been purchased by petitioner's sister, Elissa Calvo, in Florida. (Tr. 109.)

B. Procedural History

Petitioner was charged with one count of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02 [4]), and he pleaded not guilty to the charge. After a pre-trial motion to suppress was denied, petitioner went to trial in County Court, Nassau County.

On October 29, 2002, following a jury trial, petitioner was convicted of the charge and was sentenced, as a second felony offender, to a determinate term of imprisonment of three years, followed by five years of post-release supervision. Petitioner's sentence was stayed pending appeal.

On March 28, 2003, petitioner filed an appeal raising two claims: (1) that petitioner's consent to the police search of his car had not been voluntary; and (2) that the search of petitioner's car exceeded the scope of his consent. The appellate division affirmed the judgment of conviction in a decision and order dated November 24, 2003. *People v. Calvo*, 767 N.Y.S.2d 653 (N.Y. App. Div. 2003).

On January 6, 2004, the New York Court of Appeals denied petitioner's request for a stay of the execution of petitioner's sentence pending his application for leave to appeal. On January 7, 2004, petitioner surrendered to the County Court to begin serving his sentence. On March 15, 2004, leave to appeal to the Court of Appeals was denied. *People v. Calvo*, 810 N.E.2d 917 (N.Y. 2004).

On or about October 1, 2004, petitioner filed a *pro se* application for a writ of error *coram nobis*, to obtain a new appeal on the ground that appellate counsel was ineffective because he failed to raise two claims that (according to petitioner) would have resulted in the reversal of his conviction. Petitioner contended: (1) that his appellate counsel should have challenged the pre-trial finding that the police had the requisite level of suspicion to ask for permission to search his vehicle; and (2) that petitioner did not receive effective assistance of trial counsel because, even though the lower court *sua sponte* considered the above-referenced issue and ruled against petitioner, trial counsel had not raised the claim as a ground for suppression. By decision and order dated March 7, 2005, petitioner's motion was denied. *People v. Calvo*, 790 N.Y.S.2d 397 (N.Y. App. Div. 2005).

On June 14, 2005, the New York Court of Appeals subsequently denied petitioner's application for leave to appeal from the order of the Appellate Division. *People v. Calvo*, 834 N.E.2d 1264 (N.Y. 2005).

On August 17, 2005, petitioner filed a *pro se* motion to vacate the judgment against him pursuant to N.Y. C.P.L. § 440.10, in which he alleged: (1) that the prosecution used fraud and false statements to secure an indictment and subsequent conviction against petitioner; (2) petitioner's right to confront his accuser was violated when Londono's grand jury testimony was admitted at trial without petitioner's consent and in his absence; and (3) petitioner did not intentionally relinquish or abandon his constitutional right to confront and to cross-examine his accuser. On October 31, 2005, petitioner filed an addendum to his earlier motion, in which he argued that the prosecutor, in his summation, had expressed his own personal beliefs, argued facts not in evidence, denigrated petitioner and appealed to the jurors' emotions. Petitioner also claimed that, because he never consented to the search of his car, police testimony to the contrary was fabricated. On February 6, 2006, the County Court denied petitioner's motion except to allow him to proceed as a poor person. Petitioner sought timely leave to appeal from denial of his motion to vacate judgment.

While petitioner's application for leave to appeal was pending, on April 13, 2006, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. On May 10, 2006, the court ordered that the petition be held in abeyance until all of petitioner's state court remedies were exhausted.

On August 7, 2006, the Appellate Division denied petitioner's application for leave to appeal from the County Court's order denying petitioner's motion to vacate judgment. *People v. Calvo*, No. 2006-02504 (N.Y. App. Div. Aug. 7, 2006).

On August 31, 2006, petitioner renewed his habeas petition before this Court.

II. DISCUSSION

A. Standard of Review

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by AEDPA, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

B. Ineffective Assistance of Appellate Counsel

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). Under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both: (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Mayo*, 13 F.3d at 533-34; *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). In fact, "strategic choices made after thorough investigation of law and facts

5

relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, a court sitting in habeas review should not "second guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Jones*, 463 U.S. at 754; *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

Petitioner argues that appellate counsel was ineffective in failing to challenge the trial court's finding that the police had the requisite level of suspicion to ask for permission to search his vehicle. The brief of petitioner's appellate counsel to the Appellate Division was a well-reasoned, 31-page document, stressing the two points counsel apparently deemed most likely to succeed. In particular, counsel argued the following: (1) petitioner's consent to search his car was not given voluntarily; and (2) the search of his car exceeded the scope of petitioner's consent. Although appellate counsel's brief focused on these two arguments, counsel did address, although briefly, petitioner's contention that the police had a lack of suspicion to ask for permission to search his vehicle. (Pet.'s Ex. G, at 20.) Nevertheless, petitioner contends that appellate counsel was ineffective because counsel did not focus on the reasonable suspicion issue. However, appellate counsel's assessment of how much to highlight this argument is the type of judgment that, under *Jones* and *Strickland*, the Court is not entitled to second-guess.

In attempting to meet the first prong of *Strickland*, petitioner must do more than show that his appellate counsel "omitted a nonfrivolous argument." *Mayo*, 13 F.3d at 533 (citing *Jones*, 463 U.S. at 754). Instead, petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* As support for his argument, petitioner points out, in his writ of error *coram nobis*, that at the suppression hearing, the trial court had highlighted the importance of the reasonable suspicion issue, stating "some of the important issues, as I seem them were, of course, whether [the officers] had reasonable suspicion to inquire" as to petitioner. (Supp. Tr. at 163-164.) This statement, petitioner argues, indicates that appellate counsel should have focused upon the reasonable suspicion issue, and, therefore, counsel's failure to do so constitutes ineffective assistance. However, at the same hearing, the trial court also raised concerns about whether the scope of petitioner's consent permitted the police to lawfully search the duffel bag, an issue that was raised by appellate counsel in petitioner's direct appeal. (*Id.*) Appellate counsel apparently concluded that the scope of consent issue presented a more viable ground for appeal than the reasonable suspicion argument; counsel's choice to focus on this "colorable" issue, rather than the other, does not make his advocacy ineffective. Federal courts should not "second-guess reasonable professional judgments" by appellate attorneys as to what are the most promising issues for appellate review. *Jones*, 463 U.S. at 754. Therefore, appellate counsel's decision to pursue and focus on other issues, rather than those suggested by petitioner, hardly makes counsel's advocacy ineffective.

In any event, an examination of the record demonstrates the reasonableness of appellate counsel's decision not to pursue the issue of whether police had a sufficient basis to stop

petitioner and ask to search the vehicle.[1] "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). To make a stop, the law enforcement authority must be aware of "specific articulable facts" giving rise to a reasonable suspicion that the individuals to be stopped are engaged in criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975); *see also Delaware v. Prouse*, 440 U.S. 648, 654 (1979). Reviewing courts making reasonable-suspicion determinations involving investigatory stops "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)); *see also United States v. Pelusio*, 725 F.2d 161, 165 (2d Cir. 1983). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.* (citing *Cortez*, 449 U.S. at 418).

Reasonable suspicion for a stop and frisk can be based on information supplied by a credible informant. *Adams v. Williams*, 407 U.S. 143, 147 (1972). When considering the totality of the circumstances, "a face-to-face informant must . . . be thought more reliable than an anonymous [informant], for the former runs the greater risk that he may be held accountable if his information proves false." *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (quoting *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991), *accord United States v. Canfield*, 212 F.3d 713, 719 (2d Cir. 2000)); *see also Florida v. J.L.*, 529 U.S. 266, 276 (2000). In addition, "'when an informant relates information to the police face to face, the officer has an opportunity to assess the informant's credibility and demeanor.'" *United States v. Forte*, 412 F. Supp. 2d 258 (W.D.N.Y. 2006) (quoting *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000)); *see also J.L.*, 529 U.S. at 270-71. Furthermore, the totality-of-the circumstances test for determining reasonable suspicion should consider the possible presence of a deadly weapon, and, therefore, the government's need for prompt investigation. *United States v. Bold*, 19 F.3d 99, 104 (2d Cir. 1994) (citing *U.S. v. Clipper*, 973 F.2d 944, 949-51 (D.C. Cir. 1992)). Moreover, the fact that the stop occurred in a "high crime area" is among the relevant contextual considerations in assessing the constitutionality of an officer's reasonable suspicion. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119 (2000).

In the instant case, while Officer Nocella was on routine patrol, he stopped in the parking lot of Planet Malibu, a night club and frequent location for criminal activity. (Tr. 133.) Officer Nocella was informed by Londono, the security guard at the club, that Londono believed that at least one of the three individuals hired as outside security for the night had a firearm. (Tr. 134.) Londono

---

[1] The Court will assume *arguendo* for purposes of this analysis that petitioner could have persuaded the Appellate Department that the encounter with the police constituted a *Terry* stop under the circumstances. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968).

7

explained to Officer Nocella that he had personally recognized the three individuals, including petitioner, as outside security for the act that was playing at the club that night. (Tr. 149.) Londono also explained to Officer Nocella that when the individuals were told that firearms were not allowed in the club the individuals turned around and went back to their vehicle. (*Id.*) Londono then showed Officer Nocella the vehicle which the individuals returned to after being instructed that weapons were not allowed in the club. (Tr. 134.)

When considering the totality of these circumstances, there are many factors that support Londono's credibility and Officer Nocella's reasonable suspicion to ask for permission to search petitioner's vehicle, including the following: (1) Officer Nocella's face-to-face conversation with Londono provided him with an opportunity to assess Londono's credibility and demeanor; (2) the information Officer Nocella received was provided by a security guard, working at a night club which was a frequent spot for criminal activity, who would have a sufficient level of experience with patrons trying to gain access to the club while carrying weapons on their persons; (3) the close proximity of the illegal activity to Londono's workplace; and (4) the possibility that petitioner was in possession of a gun. Therefore, based on the information provided by Londono, Officer Nocella and the police officers that Officer Nocella called for back up possessed the requisite level of reasonable suspicion to stop petitioner and request permission to search his car. Given this analysis, appellate counsel's decision not to raise this meritless claim on appeal cannot be found to be objectively unreasonable.

Furthermore, even if, as petitioner suggests, appellate counsel was objectively unreasonable for failing to raise the reasonable suspicion issue, a prisoner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. *Lynn v. Bliden*, 443 F.3d 238, 245 (2d Cir. 2006). Here, petitioner has failed to show that there was a reasonable probability that his appeal would have been successful absent counsel's alleged deficient performance. In fact, when petitioner moved for a writ of error *coram nobis*, his claim for ineffective assistance was rejected by the Appellate Division. *People v. Calvo*, 790 N.Y.S.2d at 397. As set forth *supra*, this claim had no merit and, even if raised on appeal, would have been unsuccessful.

In short, petitioner cannot demonstrate that the state court's decision on this matter was contrary to, or an unreasonable application of, Supreme Court precedent under *Strickland*. As a result, habeas relief is not available on this ground.[2]

---

[2] Petitioner also claims that he had ineffective assistance of appellate counsel because counsel failed to raise the ineffectiveness of trial counsel regarding this same issue. Petitioner claims that he did not receive effective assistance of trial counsel because, notwithstanding that the lower court raised this issue on its own and ruled against petitioner, trial counsel should have challenged the court's finding that the police had the requisite level for suspicion to ask for permission to search his SUV as a ground for suppression of the gun that was recovered. As in the case of appellate counsel, trial counsel's choice to focus and argue other viable issues does not render the assistance ineffective. *See Strickland*, 466 U.S. at 689-90. Moreover, to establish ineffective assistance of counsel, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

8

## C. Additional Constitutional Claims

Petitioner asserts the following additional constitutional claims: (1) that his rights to confront and to cross-examine witnesses were denied when the grand jury testimony of a witness, Jose Londono, was entered into evidence as part of petitioner's case without petitioner's knowledge, consent and/or waiver; (2) that his Sixth and Fourteenth Amendment rights to be present during all material stages of trial were violated when, during the petitioner's absence, the parties agreed to a stipulation to enter Jose Londono's grand jury testimony in lieu of testifying in front of a jury; and (3) that his Fifth and Fourteenth Amendment rights to be free of self incrimination, were violated when a prosecution witness, Sergeant Paul Clark, allegedly gave testimony to the grand jury that divulged the petitioners' prior criminal history and falsely claimed that the petitioner was on parole supervision at the time of arrest. As set forth below, these claims should be deemed exhausted but procedurally barred because petitioner failed to raise them on direct appeal. In any event, even if these claims were reviewable, they are without merit.

Before a federal court can consider a petition for a writ of habeas corpus, the petitioner must have exhausted all available state judicial remedies. 28 U.S.C. 2254(b)(1); *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Duncan*, 513 U.S. at 365 (some quotation marks omitted) (quoting *Picard*, 404 U.S. at 275). "It is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity", the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-366. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (quoting *Dorsey v. Kelley*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney Gen. of N.Y.*,

---

would have been different. *Id.* at 691-92. Because this court cannot find that trial counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," appellate counsel properly declined to argue on appeal that trial counsel had been ineffective. *Id.* at 686. Appellate counsel's decision to omit a claim of ineffective trial counsel on appeal did not fall "'outside the wide range of professionally competent assistance'" and therefore cannot form the basis of a claim for ineffective appellate counsel under the Sixth Amendment. *Mayo*, 13 F.3d at 533 (quoting *Claudio*, 982 F.2d at 805 (quoting *Strickland*, 466 U.S. at 690)). In sum, for the same reasons that it was not ineffective of counsel to fail to raise the reasonable suspicion issue on appeal as a separate claim, it was not ineffective under the standard set forth in *Strickland* for appellate counsel to fail to raise ineffectiveness of trial counsel in purportedly failing to more vigorously pursue that issue with the trial court, especially where the trial court had raised the issue *sua sponte* and did not find the stop and search to be unlawful.

696 F.2d 186, 191 (2d Cir. 1982))); *see also Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191). However, "it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (U.S. 1982) (citing *Picard*, 404 U.S. at 277, and *Gayle v. Le Fevre*, 613 F.2d 21 (2d Cir. 1980)). State courts have been given a reasonable opportunity to pass on the federal habeas claim if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard*, 404 U.S. at 278; *see also Ulster Cty. Court v. Allen*, 442 U.S. 140, 149 (1979); *Le Fevre*, 613 F.2d at 22 n.2; *U.S. ex rel. Gibbs v. Zelker*, 496 F.2d 991, 993-94 (2d Cir. 1974). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192. "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (*citing Picard*, 404 U.S. at 276 and *U.S. ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). "Likewise, the petitioner must have placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Id.* at 192 (citing *Picard*, 404 U.S. at 276, *Callahan v. Le Fevre*, 605 F.2d 70, 72 (2d Cir. 1979), *Wilson v. Fogg*, 571 F.2d 91, 92-93 (2d Cir. 1978), and *Fielding v. Le Fevre*, 548 F.2d 1102, 1107 (2d Cir. 1977)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* (footnote omitted).

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120 (quoting *Harris*, 489 U.S. at 263 n.9)). However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 126 S.Ct. 2378 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996), and *Coleman*, 501 U.S. at 744-51). "The procedural bar which gives rise to exhaustion

provides an independent and adequate state-law ground for a conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

Following his conviction, petitioner filed a direct appeal to the New York Appellate Division. In his brief, petitioner made no claims related to the admission of Londono's testimony at trial, nor did he claim that his right against self-incrimination was violated when Sergeant Clark allegedly told the grand jury that petitioner was on parole when he was arrested in this matter. (*See* Pet.'s Ex. G, at 19-30.) The claims that petitioner now asserts were all reviewable from the record; however, none of them were raised on direct appeal. Although petitioner later attempted to make these constitutional claims in his motion to vacate pursuant to C.P.L. § 440.10, "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on *direct appeal*, despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135 (2d Cir. 2003) (emphasis added) (citing N.Y. Crim. Proc. Law § 440.10(2)(c)); *see also Wright v. Bombard*, 638 F.2d 457, 459 (2d Cir. 1980). Moreover, a petitioner for federal habeas corpus relief procedurally defaults his claim by not raising it on direct appeal. *Id.*; *see also Graham v. Costello*, 299 F.3d 129, 133 (2d Cir. 2002). Because petitioner no longer has any state remedies available to him, which occurs when a petitioner has defaulted his federal claim in state courts, he meets the technical requirements for exhaustion. *Coleman,* 501 U.S. at 732. Thus petitioner's claims are deemed exhausted under 28 U.S.C. § 2254(b) because petitioner no longer has remedies available in the New York state courts. However, petitioner's claims are procedurally forfeited because he did not raise them on direct appeal, although there was a sufficient factual record to permit such review. *Hoke*, 933 F.2d at 121. Accordingly, because when a petitioner's claims are procedurally barred, federal habeas courts also must deem the claim procedurally defaulted, *Bennett*, 353 F.3d at 139, petitioner is not entitled to have these claims entertained in a federal habeas proceeding.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases – for example, where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495 (1986). Here, petitioner has provided no explanation for his failure to raise these claims in his direct appeal to the Appellate Division, nor has he demonstrated that a fundamental miscarriage of justice would occur if these claims were not reviewed by the habeas court. Not only is petitioner's application devoid of any claim of actual innocence, but the evidence presented at trial clearly established petitioner's guilt beyond a reasonable doubt. Accordingly, petitioner's claims are deemed to be exhausted, but are procedurally barred from review by this Court. In any event, assuming *arguendo* that these claims are reviewable, they are all substantively without merit, as set forth *infra*.

### 1. Confrontation Clause

Petitioner claims that his right to confront witnesses against him was violated when the grand jury testimony of the prosecution's witness, Jose Londono, was entered without petitioner's knowledge, consent and/or waiver. However, Londono's grand jury testimony was not admitted against him by the prosecution; rather, Londono's grand jury testimony was used and entered into evidence as part of the defense's case.[3] "Ordinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt." *Cruz v. New York*, 481 U.S. 186, 190 (1987); *see also Lilly v. Virginia*, 527 U.S. 116, 123 (1999). However, the Confrontation Clause is not limited to witnesses called by the prosecution; it may also apply to a defense witness who testifies adversely to the defendant. *See, e.g., Wasko v. Singletary*, 966 F.2d 1377, 1381 (11th Cir. 1992).

In the instant case, Londono's grand jury testimony was introduced on petitioner's behalf. Specifically, Londono testified in the grand jury that the individual who was carrying a firearm was not petitioner, but another individual. (Tr. 215.) Londono's testimony was not used by the prosecution and was not part of the prosecution's case against petitioner. To the contrary, defense counsel used Londono's grand jury testimony to argue that petitioner was not in possession of the weapon when the three individuals returned to petitioner's car. Thus, Londono's testimony was helpful to petitioner's defense to show that another individual was in possession of the weapon.[4] In short, because Londono's testimony was offered by petitioner during his case and was favorable to him, the record provides a sufficient basis for concluding that petitioner's right under the Confrontation Clause was not triggered by the introduction of Londono's grand jury testimony by stipulation.

In any event, even assuming *arguendo* that Londono's grand jury testimony implicates the Confrontation Clause, petitioner's claim is still without merit because he waived his right to have Londono testify in person. The Second Circuit has recognized that courts sitting in habeas review "must accord proper weight to the role of defense counsel in fashioning an overall trial strategy, including one involving waiver of the right to confrontation, for the defendant's best advantage." *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999) (holding that defense counsel could waive defendant's Sixth Amendment right to confront a witness by stipulating to hearsay testimony) (citing *Wilson v. Gray*, 345 F.2d 282, 289-90 (9th Cir. 1965)). Moreover, courts have rejected the argument that a defendant in every instance personally must waive the right to confront a witness against him. *Plitman*, 194 F.3d at 64 ("We therefore join the majority of circuit courts of appeals and hold that defense

---

[3] During his summation, petitioner's trial counsel reiterated the fact that the defense had called Londono as a witness, stating "I called him. The people didn't call him. . . . I introduced his testimony to you, the people didn't." (Tr. 215.)

[4] On summation, petitioner's trial counsel pointed to Londono's grand jury testimony to support his argument that the gun was not in petitioner's possession. Describing Londono's testimony, counsel stated, "What does he say? . . . he says, that the person that was patted down, that had the gun on him, is someone other than my client." (Tr. 215.)

counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound.").

In this case, petitioner's trial counsel clearly made a sound strategic determination to stipulate to the grand jury testimony. As noted above, the stipulation allowed defense counsel to make the argument that petitioner was not the individual who possessed the weapon. Moreover, whether the decision to enter the grand jury testimony as a stipulation, rather than exercise the right to call a witness on petitioner's behalf, was the best decision, with the benefit of hindsight, is not the test. *See Strickland*, 466 U.S. at 689. Courts do not require that trial counsel's decision be perfect, only that it "might be considered sound." *Plitman*, 194 F.3d at 64; *see also Strickland*, 466 U.S. at 689. Furthermore, "[w]ith respect to strategic and tactical decisions concerning the conduct of trials, defendants are deemed to repose decision-making authority in their lawyers." *People v. Colon*, 682 N.E.2d 978, 979 (N.Y. 1997). The decision to submit selections from Londono's grand jury testimony, after the people had decided not to call him as a witness, in a situation that prevented the State from cross-examining him, certainly was a strategic and tactical decision that petitioner's counsel was entitled to make. Therefore, petitioner, through his trial counsel, validly waived his Sixth Amendment right to confrontation.

2. Right to be Present

Petitioner also claims that his Sixth and Fourteenth Amendment right to be present during all material stages at trial was violated when, during the petitioner's absence, the stipulation was entered to submit Jose Londono's grand jury testimony in lieu of Londono's live testimony before a jury. This claim is also without merit.

An accused enjoys a right both at common law and pursuant to the Sixth Amendment's Confrontation Clause to be present at all stages of trial. *Illinois v. Allen*, 397 U.S. 337, 338 (1970). The defendant's right to be present at trial is also implicated by the fair trial concerns of the Fifth and Fourteenth Amendments, as they require a criminal defendant's presence "'to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Gagnon*, 470 U.S. at 526 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964), and citing *Faretta v. California*, 422 U.S. 806, 819-20 n.15 (1975)); *see also United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004) (same), *cert. denied*, 543 U.S. 1072 (2005); *Polizzi v. United States*, 926 F.2d 1311, 1318 (2d Cir. 1991) (citations omitted). A defendant has the right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder*, 291 U.S. at 105-106).

However, the right to be present is not absolute and the privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow." *Id.* at 745 (quoting *Snyder*, 291 U.S. at 106-07); *see also Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002). "Although trial courts must vigorously safeguard a criminal defendant's right to be present, a defendant may expressly or effectively waive the right." *Senkowski*, 290 F.3d at 491 (quoting *United States v. Fontanez*, 878 F.2d 33, 36 (2d Cir. 1989)) (additional citations omitted). "A waiver of

13

this guarantee, as the waiver of any constitutional right in a criminal proceeding, must be knowing and voluntary," and the trial court's factual findings "as to whether [petitioner] was knowingly and voluntarily absent will not be disturbed unless 'clearly erroneous.'" *Polizzi*, 926 F.2d at 1311 (citing *Sassower v. Sheriff of Westchester Cty.*, 824 F.2d 184, 191 (2d Cir. 1987), *U.S. v. Tortora*, 464 F.2d 1202, 1208 (2d Cir. 1972), *Fontanez*, 878 F.2d at 36 (internal citations omitted), and Fed. R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous.")). In addition, "the defendant or his counsel[] must object at the time of the violation or the defendant's right to be present will be deemed waived." *Jones*, 381 F.3d at 122 (citing *Gagnon*, 470 U.S. at 529). Generally, violations of the right to be present during all critical stages of the proceeding are subject to harmless error analysis. *Yarborough v. Keane*, 101 F.3d 894, 898 (2d Cir. 1996).

In the instant case, petitioner's attorney, intending to call Londono as a defense witness, learned that Londono had expressed reluctance to testify. (Tr. 165.) The trial court and defense counsel were concerned that if Londono were to express fears for his life in front of the jury, defense counsel would be required to request a mistrial. (Tr. 170.) Therefore, the court suggested that Londono be brought into the courtroom, without the presence of the jury, in order for the court to ascertain his reluctance to testify. (*Id.*) After the jury was excused, Londono was brought into the courtroom and was asked to explain his reluctance to testify. (Tr. 172.) Londono did not want to speak in front of petitioner, so the Judge stated that he would ask whether petitioner was willing to consent to step outside, while his attorney remained in the courtroom. (*Id.*) The court then said to defense counsel, "since you want Mr. Londono to testify as your witness, and I assume you would prefer him to testify voluntarily, he is asking if he could just talk to us outside of the presence of Mr. Calvo. I will only do that if Mr. Calvo consents." Thereafter, defense counsel consulted with petitioner, then explained to the court that petitioner consented to step outside. (Tr. 173.) Although petitioner was now outside the courtroom, Londono still expressed his intention not to testify, despite the court's warning that he could be forced to take the stand. (Tr 174.) Following a brief recess, attorneys for both sides agreed to stipulate that, if Londono were asked to testify, he would give the same testimony that he gave at the grand jury hearing. (Tr 177.) The transcript does not specifically indicate whether, following the recess, petitioner re-entered the courtroom and was present while counsel stipulated as to Londono's testimony.

Here, it is clear from the record that petitioner voluntarily and knowingly waived his right to be present during the questioning of Londono. After speaking with petitioner, defense counsel told the court that petitioner had agreed to step outside of the courtroom while Londono's reluctance to testify was explored outside of the presence of the jury. In addition, petitioner did not object to the stipulated testimony when it was given to the jury. Moreover, as discussed *supra*, obtaining a stipulation to Londono's grand jury testimony allowed defense counsel to put into evidence statements that tended to show that petitioner was not in possession of the weapon, in a context that prevented the prosecution from cross-examining the witness. Therefore, even if petitioner was not present when the stipulation was reached, there is no basis to conclude that petitioner's alleged absence while counsel was stipulating

14

as to Londono's testimony resulted in a hearing that was not fair and just. *See, e.g.*, *Faretta*, 422 U.S. at 819; *Jones*, 381 F.3d at 121; *Polizzi*, 926 F.2d at 1318.

Moreover, even if, as petitioner suggests, his absence violated his right to be present at all material stages of trial, the error was harmless. Londono's fears about testifying and reluctance to do so could have prejudiced petitioner had Londono been forced to testify. Furthermore, the stipulation was a strategic and tactical decision to avoid the possible prejudice that could result from Londono's fear of testifying and was a decision that defense counsel was entitled to make on petitioner's behalf.[5] *See, e.g.*, *Strickland*, 466 U.S. at 689-90. Therefore, petitioner's claim that his Sixth and Fourteenth Amendment rights to be present during all material stages at trial were violated when, during the petitioner's absence, a stipulation was entered to enter Jose Londono's grand jury testimony in lieu of testifying in front of a jury, is without merit.

### 3. Right Against Self-Incrimination

Petitioner claims that his Fifth and Fourteenth Amendment right against self-incrimination was violated when the prosecution's witness, Sergeant Clark, allegedly gave testimony to the grand jury which divulged the petitioner's prior criminal history and falsely claimed that the petitioner was on parole supervision at the time of arrest.

---

[5] To the extent petitioner argues that his trial counsel was ineffective for agreeing to this stipulated testimony or that appellate counsel was ineffective for failing to raise this issue on appeal, the Court also finds these arguments to be without merit under *Strickland.* 466 U.S. at 689-90.

Even assuming that, as petitioner claims, such evidence was improperly put before the grand jury, the guilty verdict of the trial jury cured any defect in the grand jury proceeding. *See United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996) (holding that, despite prosecutorial misconduct, "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment") (citing *United States v. Mechanik*, 475 U.S. 66, 72-73 (1986)). Moreover, deficiencies in state grand jury proceedings are not subject to federal court review through a habeas corpus petition. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("Claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court.") (citing *Mechanik*, 475 U.S. at 72-73). Therefore, even if Sergeant Clark had testified before the grand jury that petitioner was on parole at the time of his arrest, petitioner's claim regarding such testimony could not be reviewed by this Court.

In any case, upon review of the grand jury testimony of Sergeant Clark, it is clear that no reference was made to petitioner's parole status, or to the petitioner's criminal history. (*See* Grand Jury minutes, at 22-34.) In any case, the Fifth Amendment guarantees, in part, that no person should be compelled to be a witness "against himself" in a criminal case; the privilege "adheres basically to the person, not to information that may incriminate him." *Couch v. United States*, 409 U.S. 322, 328 (1973); *see also Johnson v. United States*, 228 U.S. 457, 458 (1913) (Holmes, J.) ("A party is privileged from producing the evidence, but not from its production."). "[T]he privilege protects a person only against being incriminated by *his own* compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409 (1976) (emphasis added) (citing *Schmerber v.*

*California*, 384 U.S. 757 (1966), *United States v. Wade*, 388 U.S. 218 (1967), and *Gilbert v. California*, 388 U.S. 263 (1967)). The Constitution "does not proscribe incriminating statements elicited from another." *Couch*, 409 U.S. at 328; *see also United States v. Mickens*, 926 F.2d 1323, 1331 (2d Cir. 1991). In short, this alleged testimony does not raise a constitutional defect that warrants *habeas* relief.

### III. Conclusion

For the foregoing reasons, Calvo's petition for a writ of habeas corpus is DENIED. As Calvo has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

April 30, 2007
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Kathleen M. Rice, Esq., Nassau County District Attorney, by Tammy J. Smiley, Esq. and Cristin N. Connell, Esq., Nassau County District Attorney's Office, 262 Old Country Road, Mineola, New York 11501.